8369

BUSH v. WESTERN UNION TELEGRAPH CO.

1. TELEGRAPH COMPANIES—MENTAL ANGUISH—CONSTITUTIONAL LAW.— The constitutionality of the mental anguish statute as amended by the act of 1909 (26 Stat. 84), as held in *Stewart* v. *Telegraph Co., infra,* 119, affirmed.

2. STATUTES.—Where there is a conflict between the amending act and the act "as amended" it is usual to look to the act "as amended" to ascertain the legislative will.

3. TELEGRAPH COMPANIES—MENTAL ANGUISH.—Under said statute as amended it is not necessary to allege and proof notice to the carrier of any special affectionate relationship, or of any special damages that would likely result from failure to deliver, to warrant recovery

for mental suffering to one related by affinity for failure to deliver a message relating to sickness or death.

4. IBID.—CHARGE.—To instruct the jury, "The failure to deliver a message without satisfactory explanation is some evidence on which the jury may base a finding of a verdict for punitive damages," is not on the facts.

Before MEMMINGER, J., Edgefield, Fall term, 1911. Affirmed.

Action by Josie Bush and R. S. Bush against Western Union Telegraph Company. Defendant appeals.

*Messrs. George H. Fearons, Nelson, Nelson & Gettys,* for appellant.

*Messrs. Nelson, Nelson & Gettys* cite: *The act is so irregular and inconsistent as to be of no legal effect:* 26 Stat. 84; Endlich, sec. 24; Sutherland, sec. 261; 26 Ency. 657; 100 Ala. 32; 34 Ark. 224; 59 N. E. 489; 63 S. W. 652; 49 Am. R. 652; 86 N. E. 522; 37 Tex. 389; 23 Mon. 241; 21 Pac. 485. *The enacting clause controls:* 51 N. W. 260; 67 Vt. 314. *If otherwise construed, the act is unconstitutional:* 79 S. C. 259, 255, 257; 81 S. C. 235; 165 U. S. 159; 21 L. R. A. 789; 19 S. W. 910; 6 L. R. A. 621, 359; 44 Pac. 149; 41 S. E. 240; 74 Pac. 640; 15 L. R. A. (N. S.) 906; 65 Ala. 193; 63 S. C. 425; 71 S. C. 29. *Charge as to punitive damages:* 84 S. C. 477; 76 S. C. 248.

*Messrs. Edwin H. Folk, S. McG. Simkins* and *Thurmond & Nicholson,* contra, cite: *The act is constitutional:* 15 S. C. 593; Cool. Con. Lim., secs. 87, 200; 169 U. S. 366; 68 S. C. 357; 8 Cyc. 851, 925, 999; 95 N. E. 417; 68 S. C. 358; 31 S. C. 1; 63 S. C. 432, 169; 67 S. C. 481; 78 S. C. 42; 79 S. C. 519; 33 S. C. 61; 8 Cyc. 1052. *If a part is void, the balance may be enforced:* 30 S. C. 360; 76 S. C. 34. *Legislature may fix rules of presumption:* 8 Cyc. 820, 825, 995, 1084, 1090, 1095; 1 Mill Con. R. 128. *Is the act*

12—93

*void for irregularity and inconsistency?* 90 S. C. 132; 36 Cyc. 1132, 1134; 3 McC. 298; End. Int. Stat., secs. 62-8; 119 La. 49. *Stating an undisputed proposition in a charge is not a charge on the facts:* 69 S. C. 1. *Charge as to punitive damages is only the statement of a sound legal proposition:* 73 S. C. 380; 76 S. C. 535; 84 S. C. 159.

November 18, 1912. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. Defendant appeals from a judgment for $950.00, actual and punitive damages, awarded plaintiff for the negligent and wilful failure to transmit and deliver to her a telegram, filed with its agent at North, S. C., on January 5, 1911, and addressed to her, at Pinewood, S. C., and reading as follows: "Josie, Mike is dead. Will be buried at 5 o'clock, Salem." The person called "Mike" was plaintiff's brother-in-law.

As plaintiff's relation to deceased was only by affinity, if her case depended upon the law as it was under the decisions of this Court, prior to the act of 1909 (26 Stat. 84), amending the mental anguish statute, there would have been no presumption that she suffered mental anguish because of being deprived of the privilege of attending his funeral, as the result of the failure of defendant to transmit and deliver the message. Her damage, therefore, was special; and, as there is no allegation of any peculiarly tender relations existing between her and the deceased, and of notice thereof to defendant, at the time of filing the telegram, she would have had no cause of action. *Butler* v. *Tel. Co.*, 77 S. C. 148; 67 S. E. 757. But the act referred to made material and extensive changes in the law, and plaintiff bases her right to recover upon that act.

The defendant questions the constitutionality of the act; but the same grounds upon which it is attacked in this case were considered in the very recent case of *Stewart* v. *Tel. Co.*, *infra*, 119, filed November 1, 1912,

and its constitutionality was affirmed. Therefore, we need not consider the exceptions which raise the same points that were decided in that case.

The validity of the act is assailed in this case, however, upon a ground which was not considered in the Stewart case. The act of 1909 purports to amend section 2223, vol. I, Code 1902, which contained the original metal anguish statute. The amending act reads as follows: "Be it enacted by the General Assembly of the State of South Carolina, that section 2223, vol. I, Code of Laws of South Carolina (1902), be, and it is hereby, amended by adding at the end of the first paragraph and after the word 'messages' thereof the following: 'Without regard to relationship by blood or marriage: *Provided,* Such relationship be within the (3) degree; or whether such messages afforded notice of relationship, or, that injury or damage would result, if such anguish or suffering resulted as a matter of fact;' so that said section, when amended, shall read as follows:

"Sec. 2223. All telegraph companies doing business in this State shall be liable in damages for mental anguish or suffering even in the absence of bodily injury, for negligence in receiving, transmitting or delivering messages, without regard to relationship by blood or marriage, or whether such messages afforded notice of such relationship or otherwise, or that injury or damage would result if such anguish or suffering resulted as a matter of fact. Nothing contained in this section shall abridge the rights or remedies now provided by law against telegraph companies, and the rights and remedies provided for by this section shall be in addition to those now existing. In all actions under this section the jury may award such damages as they conclude resulted from negligence, wantonness, wilfulness, or recklessness of said telegraph companies: *Provided,* That when a telegram shows on its face that it relates to sickness or death, the real party for whose benefit the telegram was

sent, and who suffered mental anguish by reason of negligence or wilfulness of the telegraph company, may recover damages as hereinbefore provided, without being required to allege or prove that the telegraph company had notice or knowledge at the time the message was sent of his or her relation to it, or of the extent or scope of his or her damage: *Provided,* That nothing contained in this act shall affect cases now pending in the Courts."

By a comparison of that part of the act which declares what amendments were to be made with the section, as it read "when amended," it will be observed that the following words in the former are omitted from the latter: *"Provided,* Such relationship be within the (3) degree," and that the last two provisos of the section, "as amended," do not appear in the amending part of the act.

Appellant contends that the act is, therefore, void for uncertainty. But we think the question to be decided is, which part of the act shall control and be looked to to ascertain the legislative will, the part which declares what amendments were to be made, or the part which sets out the section, as it read, "when amended?" There can be no doubt of the power of the legislature to amend an act or section by declaring, in the amending act, what words shall be inserted or omitted; or, it may declare, in the amending act, that the act to be amended shall be amended so as to read as follows, and then set out the act as amended; or it may, as it undertook to do in this case, combine the two methods, and declare in the first part of the amending act what amendments are intended, and, also, set out the act, as it will read "when amended." But when there is a conflict in the provisions of the amending part of the act, and the act "as amended," to which must we look to find the legislative intent? This question naturally suggests another: To which part of the act would a legislator most naturally look, in considering it on its passage, to determine its intent and effect, and whether he would favor or oppose its passage?

It requires only a moment's reflection to answer, the act as it would read "when amended." It follows, therefore, that we can ordinarily look to that part of an amending act with greatest certainty of finding the legislative will, and, therefore, that part of the act should ordinarily control. We do not mean, however, to say that this is always so, or to lay it down as a hard and fast rule, applicable to all cases; for it is conceivable that a case might arise in which the evil to be remedied, or the defect in the statute to be amended, the amendment proposed, and the act as amended, when considered altogether in the light of all the circumstances and the rules of statutory construction, might lead to the conclusion that the legislative will is to be found in the amending part of the act. If so, of course, that must control, for it is the intention only which we seek.

We are gratified that our construction is most strongly fortified by the fact that the act of 1909, as amended, has been re-enacted, without change, by the legislature in the Code of Laws of 1912, which seems to be conclusive of the question.

This being so, the act made it unnecessary for the plaintiff to allege any special relations between herself and deceased and that defendant had notice thereof, at the time of filing the telegram, and of the special damages that would result from its breach of duty with regard to the transmission and delivery thereof.

As the plaintiff testified that she did suffer mental anguish, because of being deprived of the privilege of attending the funeral, there was no error in refusing to charge that there is no presumption that she so suffered. If there had been no evidence upon the point, the question of the presumption might have become material. Nor was there error in refusing to charge that there was no evidence of any especially affectionate relations between plaintiff and deceased, because the statute makes the existence of such

relations unnecessary to the making out of a *prima facie* case.

The Court charged: "The failure to deliver a telegraph message without satisfactory explanation is some evidence upon which the jury may base a finding of a verdict for punitive damages." This was not a charge on the facts. It was only a statement of a proposition of law, and no more prejudicial to defendant than the usual charge in such cases that delay in the transmission or delivery of a telegram raises a presumption of negligence, or that long and unexplained delay raises a presumption of wilfulness, which means no more than that there is some evidence of negligence or wilfulness, as the case may be. In neither case, can any intimation of the Judge's opinion of the weight of the evidence be gathered from the charge.

Affirmed.

Mr. Justice Fraser *concurs in the result.*

Mr. Justice Watts *did not sit.*